UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS S. HARRIS,  Civil Action No.: 19-10848
Honorable Linda V. Parker
Plaintiff,  Magistrate Judge Elizabeth A. Stafford

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 19, 22]

Plaintiff Carlos S. Harris appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his application

for supplemental security income (SSI) and disability insurance benefits

(DIB) under the Social Security Act.  Both parties have filed summary

judgment motions, referred to this Court for a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court

finds that the administrative law judge's (ALJ) decision is supported by

substantial evidence, and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor
defendant.

- Harris's motion [ECF No. 19] be **DENIED**;

- the Commissioner's motion [ECF No. 22] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Background and Disability Applications

Harris was born on July 25, 1976, making him 38 years old at the time of his alleged onset date of May 2, 2015.  [ECF No. 12-4, PageID.194-195].  He has past relevant work as a fast food worker, housekeeping cleaner, machine operator and retail stock person.  [ECF No. 12-2, PageID.143].  Harris alleged disability due to osteoarthritis in both the left and right knee, no cartilage in the left knee, history of left knee surgeries, high blood pressure, constant swelling in both legs, left hip pain, stress due to pain, arthritis in both hands, buckling of the left knee, and the inability to stand and walk for long periods of time due to knee stiffness and pain. [ECF No. 12-4, PageID.194-195].

After the Commissioner denied his applications initially, Harris requested a hearing, which took place in December 2017 and during which he, his wife and a vocational expert (VE) testified.  [ECF No. 12-3, PageID.153-192].  In a March 2018 written decision, the ALJ found Harris

2

not disabled.  [ECF No. 12-2, PageID.129-145].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Harris timely filed for judicial review.  [*Id.*, PageID.61-64; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Harris was not disabled. At the first step, he found that Harris had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 12-2, PageID.134]. At the second step, the ALJ found that Harris had the severe impairments of osteoarthritis/degenerative joint disease of the bilateral knees and bilateral hips; hypertension; asthma; obesity; left shoulder osteoarthritis status/post tear; and coronary artery disease with stage 1 diastolic dysfunction. [*Id.*, PageID.135]. The ALJ determined that Harris's alleged impairments of pes planus spurs, history of edema, hyperlipidemia, chest pain/floating rib/costochondritis, and major depressive disorder were not severe. [*Id.*]. Next, the ALJ concluded that none of his impairments,

4

either alone or in combination, met or medically equaled the severity of a

listed impairment.  [*Id.*, PageID.137].

Between the third and fourth steps, the ALJ found that Harris had the

RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a),[3]

except:

> [H]e can never push and pull with the bilateral lower
> extremities.  [He] can never climb ladders, ropes, or scaffolds.
> He can occasionally use ramps and stairs.  He can occasionally
> balance, stoop, kneel, crouch, and crawl.  He can have no
> exposure to unprotected heights or moving mechanical parts.
> He can have occasional exposure to dust, fumes, odors, gases,
> and poor ventilation.  He can perform no overhead reaching
> with the left upper extremity.  He can perform no work on
> uneven terrain.  He must use a cane to ambulate and balance.

[ECF No. 12-2, PageID.138].  At the fourth step, the ALJ concluded that

Harris could no longer perform his past relevant work as a fast food worker,

housekeeping cleaner, machine operator and retail stock person.  [*Id.*,

PageID.143].  At the final step, after considering Harris's age, education,

work experience, RFC and the testimony of the VE, the ALJ found that

there were jobs in significant numbers that he could perform, including

positions as an office clerk, a bench inspector and a bench assembler  [*Id.*,

PageID.144].

---

[3] "Sedentary work" requires being on one's feet for no more than two out of
an eight-hour workday and sitting for about six hours of an eight-hour
workday.  *See* SSR 83-10, 1983 WL 31251 at *5.

## II.    ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Harris contends that the ALJ's decision was not supported by substantial evidence and that the Appeals Council erred by excluding new evidence.  [ECF No. 19].  The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

Harris's argument begins with this catchall heading: "ALJ MacDonald's decision that Claimant was not disabled was unsupported by 'substantial evidence' and his failure to accord full credibility to the testimony of Plaintiff and his wife without providing any basis for doing so constitutes reversible error."  [ECF No. 19, PageID.1111].  He indicates that this section addresses three separate issues: "(1) Whether ALJ MacDonald's decision that Claimant was not disabled is supported by 'substantial evidence'?"; "(2) Whether ALJ MacDonald erred in determining that Plaintiff and his wife were not fully credible regarding the extent, severity and chronicity of his impairments?"; and "(3) Whether ALJ MacDonald erred in finding that Plaintiff's severe degenerative joint disease of both knees failed to meet or equal the criteria of Listed Impairment 1.02A."  [*Id.*, PageID.1110].  Within this catchall section, Harris cites no medical evidence in the record.  [*Id.*, PageID.1111-1119].  He refers to medical evidence that he described in his statement of facts and that the ALJ described in his decision, and apparently expects the Court to locate that evidence when reviewing his arguments.  And most of his arguments under his catchall heading are referred to without application of the governing standards.

7

Courts in this circuit routinely treat as waived issues "'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation[.]'" *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 583-84 (6th Cir. 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson,* 125 F.3d at 995-96 (citation and internal quotation marks omitted). "Judges are not like pigs, hunting for truffles that might be buried in the record." *Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) (citation and internal quotations omitted).

Below, the Court addresses Harris's arguments under his catchall heading.

## 1.

Harris asserts that the ALJ erred by rejecting his claim that his alleged impairments of migraine headaches, chest pain and depressive disorder were severe.  [ECF No. 10, PageID.1114-1115].  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).  By "basic work

activities," the Commissioner means "the abilities and aptitudes necessary to do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 1522(b).

Harris bears the burden of showing that his migraine headaches, chest pain and depressive disorder were severe. *Preslar*, 14 F.3d at 1110. He must also show that the error was not harmless. Since the ALJ found at step two that some impairments to be severe, his finding that other impairments were not severe is "legally irrelevant" so long as the ALJ considered the nonsevere impairments at later steps. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (citation and quotation marks omitted).

Harris neither puts any flesh on the bones of his claim that his migraine headaches, chest pain and depressive disorder significantly limit his ability to perform basic work activities, nor shows that any error at step two was legally relevant. His step two argument is waived.

9

*2.*

Harris asserts that the ALJ "erroneously found that [his] degenerative joint disease of his knees, bilaterally, did not meet or equal the criteria of Listed Impairment 1.02A."  [ECF No. 19, PageID.1115].  He bears the burden of showing that he meets this listing, *Preslar*, 14 F.3d at 1110, and does not sustain this burden.

Listing 1.02(A) is:

Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A.  The inability to ambulate effectively is defined by the listings as "an extreme limitation of the ability to walk" that "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.  Ineffective ambulation means that lower extremity functioning is so insufficient that required hand-held assistive devices limit the functioning of both upper extremities.  *Id.*

The ALJ found that the medical record did not show that Harris "had evidence of gross anatomic deformity combined with chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joints" and that the medical imaging of joint space narrowing, bony destruction or ankylosis of the affected joint was not accompanied by "the inability to ambulate effectively" or "the inability to perform fine and gross movements effectively."  [ECF No. 12-2, PageID.137].

While Harris lists as an issue his claim that the ALJ erred in finding that his impairment did not meet or equal Listing 1.02, he provides no explicit analysis of the record against the listing's requirements.  [ECF No. 19, PageID.1110, 1115-1119].  To support his argument that the ALJ erred in finding that he did not meet Listing 1.02, he is required "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith–Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432 (6th Cir. 2014).  Instead of pointing to specific evidence and addressing the requirements of the listing, Harris asks the Court to hunt for truffles that might be buried in his argument and in the record.  The Court finds that Harris's listing argument has been waived.  *See Capital Partners Corp.*, 930 F.3d at 780 n.1 (citation and internal quotations omitted).

Harris's listing argument is also unsupported by the record.  He broadly argues that the "x-rays establish that [his] knees were a mess," and his activities of daily living were "all activities that a paraplegic could perform."  [ECF No. 19, PageID.1117-1119].  Those arguments miss the specific showing that he must make.  As noted, Harris must show that his lower extremity functioning is so insufficient that required hand-held assistive devices limit the functioning of both upper extremities.  § 1.00B2b. Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes" and "the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."  *Id.*  Thus, a claimant cannot satisfy Listing 1.02 when "the use of a single cane" to ambulate does not limit the use of both upper extremities.  *Collins v. Comm'r of Soc. Sec.*, No. 18-12401, 2019 WL 3421696, at *5 (E.D. Mich. June 30, 2019), *adopted*, No. 18-12401, 2019 WL 3412744 (E.D. Mich. July 29, 2019) (collecting cases).

In his motion for summary judgment, Harris describes having used a single cane.  [ECF No. 19, PageID.1095, 1100, 1102, 1103, 1117, 1120 (citing ECF No. 12-2, PageID.138; ECF No. 12-3, PageID.164, 166; ECF No. 12-10, PageID.508; ECF No. 12-14, PageID.685-688)].  He testified

12

that he used the cane with his left hand. [ECF No. 12-3, PageID.164].

Because Harris used a single cane to ambulate, he does not satisfy Listing

1.02. *Collins*, 2019 WL 3421696 at *5.

### *3.*

Under his catchall heading, Harris argues that the ALJ violated the

"treating physician rule." The "treating physician rule" requires an ALJ to

give controlling weight to a treating physician's opinions about the nature

and severity of a claimant's condition when those opinions are well-

supported by medically acceptable clinical and diagnostic evidence, and

not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723,

727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than

controlling weight to a treating physician's opinion must give "good

reasons" for doing so to "make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p,

1996 WL 374188, at *5 (1996)).

In a November 2017 letter, Jessica Neuroth, D.O., wrote that Harris

was diagnosed with congestive heart failure diastolic state 1, pulmonary

hypertension, hypertension, hyperlipidemia, severe osteoarthritis bilateral

knees, asthma, allergic rhinitis, morbid obesity and depression. [ECF No.

13

12-8, PageID.417-418].  She described the treatment that Harris received for those conditions but did not describe any symptoms or examination findings.  [*Id*.].  Dr. Neuroth concluded, "Due to the severity of cardiac and orthopedic medical conditions, Carlos is unable to physically participate in any prolong[ed] work-related activities (>60 mins).  At this time, it is my medical and clinical assessment that currently, Carlos is physically disabled."  [*Id.*, PageID.418].

The ALJ afforded Dr. Neuroth's opinion little weight, finding that it was "not consistent with [Harris's] physical examination findings, which show[ed] some tenderness, crepitus, and limited range of motion in this [*sic*] left shoulder and bilateral knees, but also show[ed] intact sensation, full strength, intact coordination, and generally stable gait, especially with use of a cane."  [ECF No. 12-2, PageID.142].  The ALJ also reasoned, "There is no objective medical evidence showing the claimant's conditions prevent his ability to sit for six hours and stand/walk for two hours in an eight-hour workday."  [*Id.*].

Although Harris challenges the weight that the ALJ gave to Dr. Neuroth's opinion, he concedes that the issue of whether he is disabled is reserved for the Commissioner.  [ECF No. 19, PageID.1113].  This concession is consistent with well-settled law; the ALJ need not give

14

"special significance" to a treating physician's opinion that the claimant is disabled, but the ALJ must explain his consideration of that opinion. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ was also not required to defer to Dr. Neuroth's vague assertion that Harris could perform no work-related activities for more than 60 minutes. That sort of prediction is not a medical opinion. *Cf. Kolar v. Comm'r of Soc. Sec.*, No. 1:14–cv–503, 2015 WL 5589265, at *6 (W.D. Mich. Sept. 4, 2015) (a doctor's "predictions of how often plaintiff would likely miss work [is] conjecture, not a medical opinion"); *Ault v. Comm'r of Soc. Sec.*, 2016 WL 1621756, at *5 (W.D. Mich. Apr. 25, 2016) ("The doctor's opinions regarding how often Plaintiff would miss work or be off task were not entitled to controlling weight. They are conjectures, not a medical opinion."). To be a "medical opinion" entitled to deference under the treating physician rule, Dr. Neuroth was required to describe what Harris could do despite his impairments and specify his physical or mental restrictions. *Sulaka v. Comm'r of Soc. Sec.*, No. CV 16-13800, 2017 WL 8682368, at *4 (E.D. Mich. Sept. 29, 2017), *adopted*, 2018 WL 797591 (E.D. Mich. Feb. 9, 2018) (citing 20 C.F.R. § 404.1527(a)(1)). Dr. Neuroth's opinion fails to meet these requirements.

As such, the ALJ was not required to defer to Dr. Neuroth's opinion and the question is whether the weight the ALJ gave to the opinion is supported by substantial evidence.  In giving little weight to Dr. Neuroth's opinion, the ALJ explained that the record did not support that Harris could not sit, stand or walk as necessary for sedentary work.  [ECF No. 12-2, PageID.142].  Challenging this explanation, Harris makes conclusory arguments, such as, "[T]here simply is no credible medical evidence contrary to Dr. Neuroth's conclusions regarding Plaintiff's disability, and the ALJ fails to cite any credible medical opinions to the contrary."  [ECF No. 19, PageID.1113].  In so arguing, Harris cites no medical evidence that corroborates Dr. Neuroth's conclusion that he could not perform even sedentary work.

The Commissioner, in contrast, cites evidence that supports the ALJ's conclusion that Harris could perform the limited range of sedentary work described in the assessed RFC.  [ECF No. 22, PageID.1144-1145].  The Commissioner notes that, in August 2015, Harris reported to John Konel, M.D., that he could walk three blocks with a cane.  [ECF No. 12-10, PageID.508].  In March 2016, independent medical examiner Tama Abel, M.D., reported that Harris was able to drive, was independent with his activities of daily living, could walk about one block and occasionally

16

performed housework, did dishes and prepared a meal.  [ECF No. 12-14, PageID.687].  Harris walked on a treadmill for eight minutes in April 2016 during a stress test.[4]  [ECF No. 12-16, PageID.837].  The same month, Robert Render, D.O., examined Harris and found that, though he had a limp and left knee instability that was relieved by rest, he had no muscle atrophy or weakness in his extremities.  [ECF No. 12-14, PageID.713-716].

The Commissioner also cites a McLaren Bay Regional Hospital progress note from September 2016 saying that Harris had a normal gait. [ECF No. 12-16, PageID.825].  A December 2016 progress note specified that Harris had difficulty walking up the stairs and that he got winded from short walks.  [ECF No. 12-18, PageID.928].  This note corroborates Harris's claim of impairment in his knees but does not undermine the ALJ's finding that he could perform sedentary work.

After a course of physical therapy, Harris was discharged in February 2017 with an unremarkable gait and increased strength and walking tolerance.  [ECF No. 12-18, PageID.951].  The next month, Harris was reported as saying that a joint injection provided him with improvement of 70% and that he could go to Planet Fitness two to three times weekly.

---

[4] Harris was asymptomatic at peak heart rate during this stress test.  [ECF No. 12-16, PageID.837].

[ECF No. 12-18, PageID.919]. In April 2017, when Harris sought medical attention for shortness of breath and a cough, he reported that he had just returned from a six-day trip to travel to Las Vegas, Nevada.  [ECF No. 12-18, PageID.944].  His musculoskeletal examination during that visit showed a normal range of motion, and no edema or tenderness.  [ECF No. 12-18, PageID.944].  A May 2017 mental health record states that Harris exercised daily to help cope with depression.  [ECF No. 12-20, PageID.1067].

The Court finds that substantial evidence supports the ALJ's decision to give little weight to Dr. Neuroth's opinion.  Harris is right that x-rays showed significant findings in both of his knees, especially his left.  [*See, e.g.*, ECF No. 12-13, PageID.606 ("[L]ateral projections demonstrate severe osteoarthritic degeneration of the left patellofemoral joint.  And moderate arthrosis is noted on the contralateral right side."); ECF No. 12-17, PageID.870 ("[M]oderate to severe degenerative arthritic changes of both knees with narrowing of the medial compartments.")].  But a diagnosis alone does not dictate a finding of disability.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  And while Harris suggests that the Court should reweigh the evidence to find that he is disabled, such reweighing is not permissible.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930

(E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.").

### *4.*

Under his catchall heading, Harris argues that the ALJ erred by rejecting "the overwhelming import" of his and his wife's testimony "as to the severity, chronicity and extent of [Harris's] bilateral knee problem." [ECF No. 19, PageID.1116].  But "[t]he ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record."  *Mellon v. Comm'r of Soc. Sec.*, No. 14-14374, 2016 WL 908895, at *12 (E.D. Mich. Feb. 9, 2016), *adopted*, No. 14-CV-14374-DT, 2016 WL 894336 (E.D. Mich. Mar. 9, 2016).

Under Social Security Ruling (SSR) 16-3p, when determining whether a claimant is disabled, the ALJ must consider not only the claimant's "symptoms, including pain," but also "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  2016 WL 1119029, at *1.  An ALJ's subjective symptom evaluation should not be disturbed "absent compelling

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).[5]  At the same time, "such determinations must find support in the record."  *Rogers*, 486 F.3d at 241.

Here, the ALJ found that although Harris's impairments could reasonably cause the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  [ECF No. 12-2, PageID.139].  To draw that conclusion, the ALJ considered Harris's medical history, the opinion evidence and Harris's activities of daily living.  [*Id.*, PageID.139-143].  To challenge the ALJ's subjective symptom analysis, Harris emphasizes the severity of his x-ray results.  [ECF No. 19, PageID.1117].  But, as noted, the diagnoses described in his x-rays do not alone show that Harris could not perform work within the assessed RFC.  *Higgs*, 880 F.2d at 863.

---

[5] SSR 16-3p eliminated use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character."  *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).  Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight.  *See, e.g.*, *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018).

The Court finds no reason to disturb the ALJ's subjective symptom analysis.

## C.

Harris argues that the ALJ erred because the hypothetical question he posted to the VE is unsupported by substantial evidence.  To prove that a claimant can perform work that is available in the national economy, "the ALJ can rely on the VE's testimony, as long as the VE's testimony is in response to an accurate hypothetical of the claimant's physical and mental limitations."  *Kendrick v. Astrue*, 886 F. Supp. 2d 627, 638-39 (S.D. Ohio 2012).  Here, the ALJ posed a hypothetical question to the VE that was consistent with the assessed RFC.  [ECF No. 12-2, PageID.138; ECF No. 12-3, PageID.187-190].  Harris does not challenge that the hypothetical question mirrored the RFC; instead he offered "points" on why the RFC was not supported by substantial evidence.  [ECF No. 19, PageID.1119-1121].  None of his points are supported with citations to the medical record.  [*Id.*].

Harris has thus mentioned a challenge to whether the RFC is supported by substantial evidence without putting any flesh on the bones and expects the Court to hunt through the record on his behalf.  Harris fails to develop his RFC argument even though it is his burden to show that he

requires greater restrictions. *Preslar*, 14 F.3d at 1110. The Court finds that

he failed to meet that burden and that his challenge to the ALJ's

assessment of his RFC to be waived. *Id.*; *McPherson,* 125 F.3d at 995-96;

*Capital Partners Corp.,* 930 F.3d at 780 n.1.

## D.

Lastly, Harris argues that his updated medical records concerning his

total knee replacement in June 2018 necessitates remand under the "new

and material" evidence standard. [ECF No. 19, PageID.1122-1126].

Generally, if the Appeals Council declines to review an ALJ's

decision, federal courts cannot consider evidence not presented to the ALJ.

*Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Sentence

Six of the Act permits remand only when a later adjudicator is presented

with "new evidence which is material and that there is good cause for the

failure to incorporate such evidence into the record in a prior proceeding."

42 U.S.C. § 405(g). Harris must show that the records in question are

"new," as in "not in existence or available to the claimant at the time of the

administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001) (internal quotation marks and citation omitted). Evidence is

"material" if there is a "reasonable probability" that the ALJ would have

reached a different decision if the new evidence were considered. *Id.* It is

22

the claimant's burden to show that remand for consideration of new evidence is warranted. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002).

Here, in July 2018, Robert Render, D.O., performed a left total knee replacement. [ECF No. 12-2, PageID.107-111]. Dr. Render's records are "new"; they did not exist before the ALJ's March 2018 decision. But the Court finds that Dr. Render's records are not material.

In support of his argument that Dr. Render's records are material, Harris cites statements in Dr. Render's July 2018 post-operative report that Harris "had failed extensive conservative treatment including physical therapy, activity modification, and injections. His pain and disability from the left knee are affecting his qualify of life and his ability to perform even his activities of daily living." [ECF No. 12-2, PageID.107]. Harris also noted that Dr. Render wrote that Harris had a "highly degenerative distal femur, proximal tibia, a patella. There [were] extensive osteophytes circumferentially around the patella." [*Id.*, PageID.108]. From this evidence, Harris concludes that "[i]t is a reasonable probability that had an objective fact finder reviewed all this evidence," the ALJ would have found his testimony "credible" and "likely have awarded" him benefits. [ECF No. 19, PageID.1125]. The Court disagrees.

23

First, as noted, a diagnosis does not alone dictate a finding of disability or the need for greater physical restrictions. *Higgs*, 880 F.2d at 863. Second, the ALJ did not question that Harris had severe knee impairments that affected his ability to perform many activities. Largely because of Harris's severe knee impairments, the ALJ found that he could perform only a limited range of sedentary work. [ECF No. 12-2, PageID.138]. The ALJ's assessed RFC precluded Harris from working on uneven terrain and required that Harris have use of a cane. [*Id.*]. Dr. Render's post-operative report corroborates that Harris's knee impairments significantly limited his ability to perform work, but fails to prove that he could not work within his assessed RFC.

In addition, Harris's post-surgery x-ray of his knee was "unremarkable" and his patella was in the appropriate position. [ECF No. 12-2, PageID.76]. The ultrasound evaluation of his left knee showed normal compressions of the deep vein system. [*Id.*, PageID.98]. Harris was instructed to continue his outpatient physical therapy three times a week for four weeks. [*Id.*, PageID.101]. By the end of July 2018, Harris's joints were intact, he had no muscle atrophy or weakness, he had normal reflexes and sensation and he was "well healed." [*Id.*, PageID.120].

The Court finds that Harris has not established the ALJ would have reached a different decision had he considered Dr. Render's medical reports.  He has not met the burden of showing that Render's records are material, and remand for consideration of those records is not warranted.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Harris's motion for summary judgment be [ECF No. 19] be **DENIED**; that the Commissioner's motion [ECF No. 22] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD

Dated: June 2, 2020                         United States Magistrate Judge

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of*

25

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 2, 2020.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager
